UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRISTOPHER CAMERON, INGRID OVERMAN, and the F/V GALLOWS POINT,<br><br>Plaintiffs,<br><br>v.<br><br>CAPE CAUTION, INC., and CHARLES R. PIECUCH, *In Personum;* the F/V CAPE CAUTION, O.N. 606699, her engines, tackle, apparel, furniture and equipment, *In Rem*, and GARY MINKOFF, as charger and owner *Pro Hac Vice,*<br><br>Defendants. | Case No. C07-5274 KLS<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

This matter comes before the Court on the Plaintiffs' Motion for Summary Judgment as to liability. (Dkt. #42 - 48). The Defendants filed their response (Dkt. #49 - 51) and the Plaintiffs filed their Reply (Dkt. #52). Having reviewed the pleadings and case law, the Court finds that the Plaintiffs are entitled to judgment as a matter of law against the Defendants and in favor of the Plaintiffs as to liability only. All issues regarding damages remain for trial.

## BACKGROUND

The undisputed facts disclose that on February 4, 2006, the F/V CAPE CAUTION broke free from her mooring at the Westport Marina, during a storm, and collided with the F/V GALLOWS POINT.

These two vessels shared a slip at the marina and were positioned directly next to each other although tied to adjacent fingers on the pier.

Mr. Piecuch has owned the F/V CAPE CAUTION since 1986 and he starting mooring his vessel at the Westport Marina beginning in 2004. At all relevant times hereto, Gary Minkoff had a Charter Agreement with Charles R. Piecuch, owner of the F/V CAPE CAUTION. Under the terms of this Agreement, Mr. Minkoff assumed "full, complete and exclusive possession, command and control of the Vessel and of its navigation and operation." (Dkt. #43, Exhibit 2, Paragraph 2). Mr. Minkoff does not dispute this responsibility.

In their opposition to the motion, the Defendants' assert that Mr. Piecuch is an expert given his knowledge, skill and experience in owning and operating fishing vessels for 22 years and he is therefore entitled to give an opinion for consideration by this Court. For purposes of this Summary Judgment Motion, the Plaintiffs agree that Mr. Piecuch is an expert and they accept his assertions, as set forth in his declaration, that the collision between the two boats was "caused by the corroded stern cleat, the defective middle cleat which broke loose from the dock, the lack of available cleats to properly secure the CAPE CAUTION, and the poor positioning of the existing cleats." (Dkt. #50, p. 4). It is asserted that these conditions caused the vessel to break loose from its moorage and strike the F/V GALLOWS POINT.

Mr. Piecuch also notes in his declaration, that "[t]he improper placement of the cleats and the insufficient number of cleats made it impossible for me to secure the vessel tightly to the dock." (Dkt. #50, p. 2). Thus, it appears that Mr. Piecuch is of the opinion that the Westport Marina assigned the vessel to the wrong slip in that the cleats provided for securing the vessel were inadequate - both in condition and in number. He suggests that there is nothing they could have done to prevent the vessel from breaking loose from its moorage and striking the F/V GALLOWS POINT.[1] In fact, Mr. Piecuch notes that the "placement of the stern cleat put the stern line at such an angle between the dock and the vessel causing the stern to swing away from the dock, even in light winds." (Dkt. #50, p. 2). The inference is also made that had the Westport Marina assigned the vessel to the proper type of moorage, which it now has, the vessel could have been secured with 6 or more lines and it would not have broken

---

[1] The Court notes that Mr. Piecuch offers an opinion, in the alternative, as to the sequence of failure. This "opinion" however is not based on any facts presented to the Court. Dkt. #50, P. 4, Paragraph 16.

lose from its moorage during the storm.

This Court also notes that while Mr. Minkoff has not filed a declaration in response to the Plaintiffs motion, the Court assumes that Mr. Minkoff agrees with Mr. Piecuch's determination as to the cause of the vessel breaking free from its moorage.

The undisputed testimony before the Court is that Mr. Minkoff knew of the approaching storm and was of the opinion that he did not need to check on his boat. It is also undisputed, however, that other boat owners did in fact check on their boats to make sure they were properly secured.

The Defendants did not raise an Act of God defense in response to this motion.

## SUMMARY JUDGMENT MOTION STANDARD

Pursuant to Fed. R. Civ. P. 56 ( c), the court may grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex Corp., v. Catrett,* 477 U.S. 317, 323 (1985).

There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita elec. Indus. Co. V. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed. R. Civ. P. 56 (e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 253 (1986); *T.W. Elec. Service In. V. Pacific Electrical Contractors Association,* 809 F.2d 626, 630 (9th cir. 1987).

## DISCUSSION

There is no dispute that Mr. Minkoff was the bareboat charterer of the CAPE CAUTION at all relevant times.

It is also clear that there is a presumption of fault when a vessel breaks free of her moorings and damages another vessel. *The Louisiana,* 70 U.S. 164, 173 (1865). As the Plaintiffs' noted in their

1 Motion, the presumption is rebuttable only if Defendants can show affirmative proof of "inevitable
2 accident" or *vis* major, which human skill and precaution, and a proper display of nautical skill could not
3 have prevented.

4 The Defendants assert they are not responsible for the vessel breaking from its moorage but rather
5 that Westport Marina is responsible for any damage done to the Plaintiffs' vessel. They rely on *Port of*
6 *Portland v. Gulf Oil Corp.,* 1987 A.M.C. 206 (D. Or. 1984) for this proposition. However, the facts of
7 that case do not mirror the facts presented to this court. The dispute in *Port of Portland* was between the
8 dock owner and the vessel - not the vessel that broke from its moorage which then struck another vessel
9 that was properly secured.

10 The facts before the Court show that Mr. Piecuch knew that the moorage provided his boat was
11 not sufficient for him to properly secure his boat to the pier. Mr. Minkoff was present when the boat was
12 secured to the dock and had that same knowledge. With news of the impending storm combined with
13 knowledge that the F/V CAPE CAUTION was not properly secured, this Court can only conclude that the
14 Defendants failed to take actions that could have been taken to prevent this incident.

15 The Defendants have provided no evidence to rebut the presumption of fault and the Plaintiffs are
16 entitled to judgment against the Defendants in favor of the Plaintiffs as to liability only.

17 DATED this 8th day of September, 2008.

Karen L. Strombom
United States Magistrate Judge